CAROTHERS *v.* ESTATE OF V. M. CAROTHERS, DECD.

No. 40105 April 16, 1956 86 So. 2d 855

*Cunningham & Cunningham,* Booneville, for appellant.

*James N. Godwin,* Booneville, for appellee.

Lee, J.

V. M. Carothers died on February 27, 1942. His widow, on her petition, was appointed administratrix on June 2nd thereafter; and she has been administering the estate since.

On December 16, 1954, Mrs. Carothers filed a petition to probate in solemn form, as the last will and testament of V. M. Carothers, deceased, a certain instrument in the handwriting of the decedent, which was attached to the petition. In explanation of the delay, it was averred that she was uninformed of the existence of the instrument at the time of her appointment as administratrix. The writing was in the following words and figures to-wit:

"This is to convey to my wife Mrs. V. M. Carothers during her lifetime every thing that I now own or possess. Including my life insurance & personal property

& real estate. At my death for her to do with as she sees fit. I am doing this of my own free will & believing I am in my right mind, This fourth day of June 1938.

V. M. Carothers''

The court, on final hearing, concluded that the decedent intended to convey a present interest to his wife in all of his property, and that the instrument was therefore intended as a deed and not as a will. The decree denied the relief prayed for, and Mrs. Carothers appealed.

In Knight v. Knight, 133 Miss. 74, 97 So. 481, this Court held that, if the maker, upon the execution of a writing, intends to convey any estate or interest whatever in land to vest before his death, the instrument is a deed; but if he intends that the conveyance of the estate or interest shall take effect only after his death, the instrument is a will. See also Myers v. Viverett, 110 Miss. 334, 70 So. 449; Gaston v. Mitchell, 192 Miss. 452, 4 So. 2d 892; Watts v. Watts, 198 Miss. 246, 22 So. 2d 625; Peebles v. Rodgers, 211 Miss. 8, 50 So. 2d 632; Rodgers v. Rodgers, 218 Miss. 655, 67 So. 2d 698.

██ █ The first two sentences of the instrument partake somewhat of the nature of a deed. But there was no delivery, and of course no title passed. The third sentence provides for a disposition of his property after death. The fourth sentence declares that he was acting of his own free will, and expressed his belief that he was in his right mind. These two sentences are evidently testamentary in character.

██ █ But even if the instrument is construed to be of a dual character, this does not invalidate it as a will. In 57 Am. Jur., Wills, Section 32, pages 57 and 58, is found the following: ''An instrument need not be homogeneous in order to the valid as a will. An instrument purporting to operate inter vivos in some of its provisions may, if executed with the formalities of a will, operate also as a will, provided there is no attempt to

dispose of the same property inter vivos, and again after the makers death. Since a person may act animo testandi without knowing that he is making a will, provisions in an instrument which is effective as an instrument inter vivos may be testamentary notwithstanding it did not occur to the person who signed the instrument that he was executing his will. An instrument in writing may be a contract respecting property in one part and testamentary in another part in relation to other and distinct property, or it can be a deed in one part and a will in another part, provided, of course, it meets the legal requirements as to execution necessary to both such formal documents.'' See also Page on Wills, Vol. 1, Section 69, page 156, where it is said: ''The same instrument may be both a conveyance and a will as to different properties disposed of therein.'' See also 11 A. L. R. 105, and 45 A. L. R. 843.

 In 57 Am. Jur., Wills, Section 8, page 45, it is said that ''it is the animus testandi that gives an instrument testamentary character. * * * An instrument is testamentary in character where, from the language used, it is apparent that the writer intended to make a disposition of his property or some part thereof, to be effective at his death.''

In Buffington v. Thomas, 84 Miss. 157, 36 So. 1039, Mamie Buffington wrote a letter to a friend expressing doubt as to whether she would live to see the next morning, and saying, among other things, ''in case that I die see that old Buffington (her husband) has nothing of mine, not even a lock of my hair. Eliza (her sister) did what she could for me and I want her to have our home in Yazoo City.'' She requested an ''answer at once'', and said ''this is private''. This Court upheld the probate of the instrument as a will.

In Prather, et al v. Prather, et al, 97 Miss. 311, 52 So. 449, there was a letter written by P. P. Prather to his brother, H. E. Prather, but never delivered, and on the

other hand kept in his possession, in which he said, among other things, "if anything should ever happen to me, I want you and Bro. Walter to get what I have, and be sure and not let no one beat you out of it in days to come. * * * Keep this to yourself, and oblige." A demurrer to the petition to probate this letter as an alleged will was overruled. On appeal, this Court held that "if the allegations of the petition are true, that for sufficient reasons to be shown the decedent never intended to deliver the writing to his brother during the former's lifetime, but kept it, treating and intending it as his will, then it is his will."

In Estes v. Estes, 200 Miss. 541, 27 So. 2d 854, the holographic instrument was in these words and figures: "March 1939 I give to my sister Caroline Wallace Estes everything I own (real and personal) without bond. (Signed) Mary E. Estes." Miss Estes retained the instrument in her possession for more than five years, until her death on November 1, 1944, without her sister Caroline Wallace Estes knowing anything about it; and the paper was found in a sealed envelope in her pocket book or purse, after her death. The Court held that the word "give" did not necessarily denote an intention to vest the title of her property in the donee in in praesenti; and that her retention of the instrument in her possession clearly indicated an intention that it should not take effect until after her death.

Following the Estes case, supra, "this is to convey does not necessarily denote an intention to vest the title of his property in the donee in praesenti. On the contrary, the retention of the instrument in his possession indicated an intention that it should not take effect until after his death.

Thus the first two sentences of the instrument, in the light of the occurrences after its execution, namely, the failure to deliver and the retention in his possession, are not antagonistic to the subsequent testamentary

character. In other words, here was a man on June 4, 1938, who, in his own handwriting, said that he was acting of his own free will and he believed that he was in his right mind. He said that his purpose was to convey to his wife, Mrs. V. M. Carothers, during her lifetime, everything that he then owned or possessed, including his life insurance, personal property and real estate; and at his death, for her to do with it as she saw fit.

He did not deliver that instrument to his wife. On the other hand, he kept it in his possession, and she did not know anything about it until many years after his death. The very fact that he retained it in his possession is strong evidence that he did not intend for it to take effect until after his death. Among his assets was life insurance. If it had been payable to his wife, there would have been no necessity to make reference to it. Presumably it was payable to his estate. It is unlikely that he intended to vest in his wife whatever cash or loan value that the insurance had accumulated at that time. Undoubtedly it was his purpose that his wife would receive the proceeds thereof at his death.

 █ Under all of the circumstances, we conclude that the instrument was testamentary; that, at the time of the death of the decedent, Mrs. Carothers was vested with full right and title to all of the property which her husband owned and possessed; and that she became the sole owner thereof.

The instrument should have been admitted to probate. Consequently the decree of the trial court will be reversed, and the cause will be remanded with directions to the trial court to admit the instrument to probate, and for such further proceedings as may be necessary and consistent with this opinion.

Reversed and remanded with directions.

*Roberds, P. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.